## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Eddie Lee Richardson, a/k/a
Hotwire the Producer,

        Plaintiff,

v.

Karim Kharbouch, a/k/a
French Montana,

        Defendant.

No. 19 CV 02321

Honorable Nancy L. Maldonado

## MEMORANDUM OPINION AND ORDER

Plaintiff Eddie Lee Richardson brings this action under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, against Defendant Karim Kharbouch—a well-known hip hop artist who performs under the name French Montana. Plaintiff claims that Defendant's hit single "Ain't Worried About Nothin'" ("AWAN") was created using the melody of a song that Plaintiff composed and shared online when he was sixteen. Plaintiff alleges that Defendant's public performances of AWAN constitute willful copyright infringement, for which he seeks damages and equitable relief. Currently before the Court are cross-motions for summary judgment. (Dkt. 69) (Plaintiff); (Dkt. 75) (Defendant). For the reasons given below, the Court grants Defendant's motion in part, denies it in part, and denies Plaintiff's motion in full.

## Background

Because this case is before the Court on summary judgment, the factual record is framed largely by the parties' Local Rule 56.1 statements and responses, (Dkt. 66-1, 69-1, 79-1), although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Regrettably, the parties' filings deviate from Local Rule 56.1 in significant

respects. The Court will discuss the implications of this non-compliance before summarizing the facts of this case. It will then provide a brief overview of the Copyright Act of 1976, which articulates the legal framework governing Plaintiff's claims.

### A.    Local Rule 56.1

In the Northern District of Illinois, Local Rule 56.1 "guides how parties must marshal evidence at the summary judgment stage." *Flint v. City of Belvidere*, 791 F.3d 764, 766 (7th Cir. 2015). The rule requires movants for summary judgment to file, in addition to a supporting memorandum of law, a "statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." N.D. Ill. L.R. 56.1(a)(2). Local Rule 56.1(d) requires that the facts in the movant's statement be arrayed in "concise numbered paragraphs," each of which must contain references to the "specific evidentiary material . . . that supports it." N.D. Ill. L.R. 56.1(d)(1)–(2).

In opposing a motion for summary judgment, a non-movant must "file a response" to the movant's statement of material facts "that complies with LR 56.1(e) and that attaches any cited evidentiary material not attached to the" movant's statement. N.D. Ill. L.R. 56.1(b)(2). Local Rule 56.1(e) requires that the non-movant's response "consist of numbered paragraphs corresponding to the numbered paragraphs" in the movant's statement and that each of these paragraphs "set forth the text of the asserted fact (including its citations to the supporting material), and then shall set forth the [non-movant's] response." N.D. Ill. L.R. 56.1(e)(1). Each response must either "admit," "dispute," or "admit in part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). Where the non-movant disputes a fact, he or she must "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. L.R. 56.1(e)(3).

In addition to responding to the movant's statement of material facts, a non-movant may also file a statement of his or her own, setting forth in numbered paragraphs—with citations to the record—any "additional material facts that comp[ly] with L.R. 56.1(d) . . . ." N.D. Ill. L.R. 56.1(b)(3), (d). If the non-movant relies on evidence in the record not attached by the movant to his or her statement of material facts, the non-movant must attach that evidentiary material to his or her response. N.D. Ill. L.R. 56.1(b)(3). The moving party must file a response to the non-movant's statement of additional material facts, if any, and that statement must comply with the same requirements applicable to the non-movant's response to the movant's statement of material facts. N.D. Ill. L.R. 56.1(c)(2).

Local Rule 56.1 serves to "inform the court of the evidence and arguments in an organized way—thus facilitating its judgment of the necessity for trial." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). The rule, promulgated by the Northern District of Illinois pursuant to Federal Rule of Civil Procedure 83(a), is not merely aspirational—it is a rule of procedure like any other, for which the failure to comply can carry severe consequences. *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014) ("If parties fail to comply with local rules, they 'must suffer the consequences, harsh or not.'" (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)). District judges possess broad discretion to "require strict compliance with Local Rule 56.1," *Flint*, 791 F.3d at 767, and are not required to "scour the record looking for factual disputes." *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015).

Unfortunately, the parties' filings fail to comply with Local Rule 56.1 in significant ways. Plaintiff's Rule 56.1(b)(2) response to Defendant's statement of material facts, for instance, does not specifically respond to each of the facts in Defendant's statement. (Dkt. 79-1). Instead, Plaintiff responds to only one of those facts. While the Court interprets Plaintiff's non-responsiveness as

indicative of his agreement with the remainder of the facts asserted in Defendant's statement, Plaintiff is reminded that Local Rule 56.1 requires a non-movant's response to "set forth the text of" and "admit," "dispute," or "admit in part and dispute in part" each fact asserted by the movant, N.D. Ill. L.R. 56.1(e)(1)–(2).

The most significant departure from Local Rule 56.1 is Defendant's failure to file a response to either Plaintiff's Rule 56.1(a)(2) statement of material facts (filed with Plaintiff's summary judgment motion) or Plaintiff's Rule 56.1(b)(3) statement of additional facts (filed in response to the statement of material facts Defendant included with his summary judgment motion). Local Rule 56.1 makes clear that a party's failure to respond to facts asserted by the movant in a Rule 56.1(a)(2) statement of material facts or by the non-movant in a Rule 56.1(b)(3) statement of additional material facts results in admission, at least for the purpose of ruling on the motion for summary judgment. N.D. Ill. L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *Washington v. McDonough*, 2021 WL 1962420, at *3 (N.D. Ill. May 17, 2021) (deeming facts asserted in movant's statement of material facts admitted where non-movant failed to file a response under Local Rule 56.1(b)(2)); *Allied Ins. Co. v. United States*, 2022 WL 4182383, at *5 (N.D. Ill. Sept. 13, 2022) (deeming facts asserted in non-movant's statement of additional material facts admitted where movant failed to file a response under Local Rule 56.1(c)(2)).

In its discretion, the Court will enforce Local Rule 56.1 in this case, with a few exceptions to promote an eventual decision on the merits, and not by a technical default. As will become clearer below, were the Court to deem paragraphs 4, 6, and 7 of Plaintiff's statement of material facts admitted, that decision would all but require the Court to enter summary judgment in Plaintiff's favor. Paragraphs 4 and 6, citing to an expert opinion, state that "AWAN is 'shockingly

4

similar' to HPW," (Dkt. 69-1, ¶ 4); and that "[i]t is 'extremely unlikely'" that these similarities are attributable to a common source in "the public domain," (*id.* at ¶ 6; Dkt. 66-5). Paragraph 7 states that "[o]rdinary observations by the public confirm that 'there is more than a passing similarity' between AWAN and HPW," and is based on the opinion of a TMZ journalist (or perhaps more than one). (Dkt. 69-1, ¶ 7; Dkt. 66-10).

The Court is not inclined to decide this case on a technicality, and will not strictly enforce Rule 56.1 as to these three facts. The Court takes Defendant's failure to respond as an acknowledgement that these individuals expressed those opinions, not as an admission that those opinions are factually correct. With this exception, the Court deems every other statement of fact in the Local Rule 56.1 filings admitted, save the lone fact to which Plaintiff objected. On that understanding, the Court will now summarize the salient facts bearing on Plaintiff's claims.

### B.    The Facts

In 2012, Plaintiff Eddie Lee Richardson—then just sixteen years old and an aspiring music producer—composed an original piece of music titled "*Hood* Pushin' Weight" ("HPW"). (Dkt. 69-1, ¶ 1); (Dkt. 72). According to Plaintiff's expert report, HPW is "comprised of an arrangement of seven [musical] motives"—"short musical idea[s] . . . used to develop longer musical expressions like melodies."[1] (Dkt. 69-5, 3–4). With the exception of the "vocal phrase 'Hotwire,'" which Plaintiff interspersed throughout HPW to tag the work as his own, HPW is purely instrumental. (*Id.* at 4); (Dkt. 69-1, ¶ 1).

On October 7, 2012, Plaintiff uploaded HPW to SoundClick.com, an "online audio distribution and music sharing website that enables its users to upload, promote, and share audio."

---

[1] A melody is "a succession of single notes that develops over an extended period of musical time . . . ." (Dkt. 69-5, 3).

(Dkt. 69-1, ¶ 1). According to Plaintiff, SoundClick.com "is widely known by music producers and artists . . . ." (69-2, ¶ 2).

On April 15, 2013, roughly six months after Plaintiff uploaded HPW to SoundClick.com, Defendant released the hit single "Ain't Worried About Nothin'" ("AWAN"). (Dkt. 69-1, ¶ 3); (Dkt. 66-1, fact #1). AWAN proved immensely popular, reaching number ten on the Billboard charts and inspiring collaborations with some of the music industry's biggest names, including Lil Wayne, Puff Daddy, Wiz Khalifa, Miley Cyrus, and The Game. (Dkt. 69-1, ¶ 5); (Dkt. 66-1, fact #4); (Dkt. 66-5, Richardson Dep. Tr. 129:16–130:24). On May 7, 2013, Defendant posted the official music video for AWAN to his YouTube channel, which has since garnered more than 93 million views. (Dkt. 69-1, ¶ 10); (Dkt. 69-13).

Although Defendant admits that he "contributed to the creation of AWAN by writing its lyrics," he maintains that AWAN's underlying music was created by others. (Dkt. 66-10, 5). In answer to one of Plaintiff's interrogatories, Defendant explained that the music for AWAN was created by a team of three producers—Richard Preston Butler, Jr., known professionally as "Rico Love," Earl Hood, and Eric Goudy. (*Id.* at 6). Rico Love was apparently the driving force behind AWAN, and allegedly "created the music" for it in Miami. (*Id.* at 5–6).

Plaintiff heard AWAN for the first time on May 5, 2013. (Dkt. 69-1, ¶ 3); (Dkt. 66-1, fact #2). Plaintiff "instantly" suspected that AWAN's underlying melody was copied from HPW, although AWAN included additional "vocalized lyrics and transitional effects." (Dkt. 69-5, 4); (Dkt. 69-2, ¶ 3); (Dkt. 69-1, ¶¶ 4, 6). According to Plaintiff's expert, "AWAN contains . . . six of the seven motives of HPW in the introduction and subsequent sections, including all verses, choruses, and breakdowns," a similarity he found "'shocking.'" (Dkt. 69-1, ¶ 4).

In light of the patent similarities between AWAN and HPW, Plaintiff "immediately" contacted Defendant on Twitter. (Dkt. 69-2, ¶ 4). Plaintiff sent Defendant "a link to HPW on SoundClick.com" and demanded "credit for [his] work." (*Id.* at ¶ 4); (Dkt. 69-1, ¶ 8); (Dkt. 69-11). Defendant told Plaintiff that he should reach out to Rico Love. (Dkt. 66-1, fact #5); (Dkt. 69-2, ¶ 4); (Dkt. 69-11). The conversation appears to have ended there.

On May 6, 2013 (the very next day), Plaintiff registered his copyright in HPW with the U.S. Copyright Office—apparently "as a sound recording." (Dkt. 69-1, ¶ 9); (Dkt. 66-1, fact #3); (Dkt. 69-2, ¶ 5). Plaintiff's copyright in HPW was registered as part of a compilation of "[a]t least 30" songs, which Plaintiff collectively titled "Hotwire's Instrumentals." (Dkt. 66-4, Richardson Dep. Tr. 88:7–16); (Dkt. 69-12); (Dkt. 51, ¶ 12).

It is undisputed that at some point after listening to AWAN, perhaps after his conversation with Defendant though the Court cannot be sure, Plaintiff "formed the opinion that the beat to AWAN had been stolen by . . . Rico Love . . . ." (Dkt. 66-1, fact #2). Sometime in 2013, Plaintiff "reach[ed] out to" Rico Love on Twitter, and the two had a "very brief" conversation.[2] (Dkt. 66-6, Richardson Dep. Tr 78:1–80:4). Defendant's statement of material facts asserts that "Plaintiff ceased to believe that Love stole his beat" after this exchange. (Dkt. 66-1, fact #5). But as Plaintiff correctly points out, this is not an accurate interpretation of his deposition testimony. Plaintiff explained during his deposition that, even after his conversation with Love, he remained firmly convinced that *someone* involved in AWAN's production had copied HPW—he simply was unable to determine precisely who. (Dkt. 66-6, Richardson Dep. Tr. 80:22–81:7).

---

[2] There is no record of that conversation, apparently because it was deleted by Rico Love or "somebody with access to his [Twitter] account . . . ." (Dkt. 66-6, Richardson Dep. Tr. 79:7–11). According to Plaintiff, if one party to a two-way Twitter conversation deletes the conversation, it erases any record of that conversation on both ends. (*Id.* at 79:2–6).

At this point, Plaintiff felt like "there was nothing . . . else [he] could do." (*Id.* at 81:11–15). Plaintiff had "reached out to the artist [and] . . . reached out to the producer and didn't seem to have success with either of them." (*Id.*) Over the ensuing months, Defendant performed AWAN publicly hundreds of times, including "378 times from . . . April 5, 2016" to the date Plaintiff moved for summary judgment. (Dkt. 69-1, ¶ 12). At least one of those performances took place within the Northern District of Illinois while this lawsuit was pending. (*Id.*)

Somehow—the record does not make entirely clear why—Defendant himself has received $0 in compensation "for sales of AWAN by distributors" and $0 from any "performances of . . . AWAN." (Dkt. 66-1, fact #9). Although the Court is somewhat perplexed by these claims, Plaintiff does not dispute them, and the Court will not question them further.

Plaintiff "did not immediately file his claim due to his young age at the time" of these events. (Dkt. 69-1, ¶ 11). According to Plaintiff, he also had trouble "hir[ing] an attorney." (Dkt. 69-2, ¶ 6). He commenced this copyright infringement suit on April 5, 2019. (Dkt 69-1, ¶ 11); (Dkt. 1). On January 11, 2021, he filed a first amended complaint—the operative complaint in this case. (Dkt. 51).

### C.    Legal Framework

"The Constitution grants Congress the power '[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . . the exclusive Right to . . . their . . . Writings.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (quoting U.S. CONST. art. I, § 8, cl. 8). The Copyright Act of 1976 ("the Copyright Act") is Congress's latest effort to "craft[] a comprehensive statutory scheme" exercising that power. *Id.* To this end, the Copyright Act "establishes the prerequisites for copyright protection and sets limits on its scope." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 885 (7th Cir. 2021).

For present purposes, the provisions of the Copyright Act can be divided into three categories: (1) those defining what works are amenable to copyright protection and setting forth authors' rights in those works; (2) those imposing prerequisites and limitations on suits for copyright infringement; and (3) those governing the relief available to copyright holders who bring such suits.

### 1. Copyright Protection and the Rights of Copyright Holders

"[C]opyright protection" under the Copyright Act "subsists . . . in original works of authorship fixed in any tangible medium of expression."[3] 17 U.S.C. § 102(a). Copyright protection under the statute attaches "immediately upon the . . . creation" of a qualifying work, *Fourth Estate Pub. Benefit Corp. v. Wall-Street.Com, LLC*, 139 S. Ct. 881, 887 (2019), and "grants . . . copyright holder[s]" a bundle of "'exclusive' rights to use and to authorize the use of" their protected works in a number of ways. *Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417, 432–33 (1984) (quoting 17 U.S.C. § 106). Those rights are conferred by section 106 and limited in important respects by other provisions of the Act. See generally 17 U.S.C. §§ 107–122.

Section 106 generally grants copyright holders the "exclusive rights" (1) "to reproduce the copyrighted work," (2) "to prepare derivative works based upon the copyrighted work," and (3) "to distribute copies . . . of the copyrighted work to the public . . . ." *Id.* § 106(1)–(3). In some cases, section 106 also grants copyright holders the exclusive rights to perform publicly or display their copyrighted works, *id.* § 106(4)-(6), although the scope of these rights depends on the category of work at issue.

---

[3] Because it is undisputed in this case that HPW qualifies for copyright protection, the Court will not discuss the requirements of originality and fixation in any detail.

Copyright protection in a sound recording, for instance, is less robust than copyright protection in a musical composition. The copyright holder in a musical composition has the exclusive right to "perform" and "display the copyrighted work publicly," 17 U.S.C. §§ 106(4)-(5), whereas a copyright holder in a sound recording has only the exclusive right to "perform the copyrighted work by means of a digital audio transmission." *Id.* § 106(6); see also *id.* § 114(a) ("The exclusive rights of the owner of copyright in a sound recording are limited to the rights specified by clauses (1), (2), (3) and (6) of section 106, and do not include any right of performance under section 106(4)"). Section 114(d) places additional restrictions on the limited performance right granted by § 106(6).

Because the Copyright Act defines infringement as any act that "violates any of the exclusive [statutory] rights of the copyright owner," a copyright holder suing for infringement must always specify which of these exclusive rights the Defendant has violated. 17 U.S.C. § 501(a).

### 2. *Prerequisites to and Limitations on Copyright Infringement Suits*

Section 501(b) of the Copyright Act "creates a cause of action for [copyright] infringement." *Signature Construction*, 994 F.3d at 886; *Fourth Estate*, 139 S. Ct. at 887 ("The Copyright Act entitles a copyright owner to institute a civil action for infringement of [his] exclusive rights."). In order to bring an infringement action, however, a copyright holder must first register his copyright with the U.S. Copyright Office. 17 U.S.C. § 411(a) (providing that, with one exception not relevant here, "no civil action for infringement of . . . copyright . . . shall be instituted until . . . registration of the copyright claim has been made in accordance with this title"). This

requirement "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights . . . ." *Fourth Estate*, 139 S. Ct. at 887.[4]

If a copyright holder has properly registered his copyright, he may sue on any claim of infringement accruing "within three years" of the commencement of suit. 17 U.S.C. § 507(b). "[W]hen a defendant commits successive violations, the statute of limitations runs separately from" each discrete act of infringement. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). Therefore, although a given act of "infringement is actionable within three years, and only three years of its occurrence," the running of the statute of limitations on one claim of infringement does not foreclose a copyright holder from seeking relief for more recent acts of infringement. *Id.*

### 3. Statutory Damages

The Court will discuss the substantive standard applicable to copyright infringement claims further below. If a copyright holder can prove such a claim, the Copyright Act authorizes him to recover either his "actual damages and any additional profits of the infringer," or statutory damages. 17 U.S.C. § 504(a). A copyright holder "may elect, at any time before final judgment is rendered, to recover" statutory damages. *Id.* at § 504(c)(1). Plaintiff has done so in this case. (Dkt. 79, 3).

"By its terms, § 504(c)(1) limits a plaintiff's recovery to one award of statutory damages for each work infringed." *Sullivan v. Flora, Inc.*, 936 F.3d 562, 567 (7th Cir. 2019). Therefore, although a jury may find a defendant liable for many acts of infringement, the plaintiff is entitled

---

[4] Because a copyright holders' exclusive rights under the Copyright Act "vest[] . . . upon creation of their works," the Copyright Act technically "prohibit[s] infringement from that point forward." *Fourth Estate*, 139 S. Ct. at 891. So the mere fact that a copyright holder has not registered his copyright does not mean that the public is free to use the copyright holder's work without permission. Upon registering a copyright, the copyright holder "can recover for infringement that occurred both before and after registration," so long as the lawsuit is brought within the statute of limitations. *Id.* at 886–87.

to only one award of statutory damages if those acts infringed the same work. The size of that award is a matter of discretion for the jury, although the statute sets higher and lower bounds within which that discretion must be exercised. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (holding that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself").

The Copyright Act sets a default range of $750 to $30,000, which the jury can award as it "considers just." 17 U.S.C. § 504(c)(1). However, if the jury finds "that [the] infringement was committed willfully," the maximum award increases to $150,000. *Id.* at § 504(c)(2). And if the jury finds that the infringement was innocent—because the defendant "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright"—it may award as little as $200. *Id.*

With the factual and legal background of this case in tow, the Court will proceed to consider the specifics of Plaintiff's claims and the merits of the parties' cross-motions for summary judgment.

## Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if its determination by the trier of fact "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute with respect to such a fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If so, a motion for

summary judgment must be denied, no matter how overwhelmingly "the evidence . . . favors" the movant. *Id.*

A court's "function" at this stage "is not . . . to weigh the evidence and determine the truth of the matter," but rather to determine "whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." *Id.* at 249, 252. In conducting this inquiry, courts must "view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Holloway v. City of Milwaukee*, 43 F.4th 760, 765 (7th Cir. 2022). However, "it is not the court's job to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Hildreth v. Butler*, 960 F.3d 420, 429–30 (7th Cir. 2020) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead" point to specific "evidentiary materials" demonstrating a genuine issue for trial. *Harney*, 526 F.3d at 1104 (7th Cir. 2008).

## Analysis

Plaintiff's operative complaint in this case asserts two counts against Defendant—one for copyright infringement and one for willful copyright infringement. Plaintiff has moved for summary judgment on his claims, asking the Court to find that Defendant willfully infringed his copyright as a matter of law, and to enter an order awarding Plaintiff statutory damages and permanently enjoining Defendant from performing AWAN. (Dkt. 69 at 1, 6.) Defendant has cross-moved for partial summary judgment on several aspects of Plaintiff's claims, arguing that Plaintiff can only recover for acts of infringement after April 5, 2016, that Plaintiff's damages are limited to one award of statutory damages, and that any acts of infringement by Defendant were innocent as a matter of law.

Before reaching the merits of the parties' cross-motions for summary judgment, a few threshold words about the scope of Plaintiff's theory of infringement and the elements of his claim are necessary. As the Court will discuss further below, Plaintiff has conceded that the Copyright Act's three-year limitations period restricts the scope of liability in this case to acts of infringement occurring after April 5, 2016. (Dkt. 79, 3). This limited liability period, coupled with the relative dearth of evidence in the record on Defendant's role in distributing AWAN after April 5, 2016, has apparently led Plaintiff to elect to pursue only a performance-based, rather than reproduction-based, theory of infringement. Specifically, although Plaintiff's complaint seeks to hold Defendant liable for both his "performances over the melody of AWAN" *and* his role in "distribut[ing] . . . AWAN . . . ." (Dkt. 51, ¶ 31), Plaintiff's motion for summary judgment now appears to seek to hold Defendant liable only for his performances of AWAN. (Dkt. 69, 4) ("Kharbouch is liable to Richardson for at least 378 performances of AWAN between the three years preceding Richardson's claim and the present day."); (Dkt. 80, 1) ("The actual issue is whether Kharbouch's performances of AWAN infringe on Richardson's exclusive right to use HPW."). In short, in his motion, Plaintiff does not seek to hold Defendant liable for any distribution of the allegedly infringing work, but rather only for performances of the work after April 5, 2016.

In light of Plaintiff's concession regarding the liability period, and his exclusive focus on Defendant's performances of AWAN in his motion for summary judgment, Plaintiff will essentially need to establish four elements to prove his claim: *first*, that he has a valid copyright in HPW, properly registered with the U.S. Copyright Office; *second*, that AWAN unlawfully copied HPW's melody; *third*, that Defendant's public performances of AWAN after April 5, 2016, violate Plaintiff's performance rights in HPW under the Copyright Act; and *fourth* (at least with respect to count two of his complaint), that Defendant engaged in these infringing performances willfully.

14

At this stage, the parties appear to agree on the first element, that is, that Plaintiff has a valid copyright in HPW: Plaintiff asserts that he has a valid copyright and attaches a registration certificate, and Defendant does not contest the validity of the copyright. (Dkt. 69-1, ¶ 9); (Dkt. 66-1, fact #3); (Dkt. 69-2, ¶ 5). The parties' briefing and cross-motions therefore focus on the second and fourth elements, that is, whether AWAN is an unlawful copy of HPW, and whether any infringement was willful, as well as the issue of damages.

However, the Court observes that there is one aspect of the record that is unclear and not sufficiently addressed by the parties that has important implications for another fundamental element of Plaintiff's claim, specifically the third element above: whether Defendant's public performances of AWAN after April 5, 2016 violate Plaintiff's performance rights in HPW under the Copyright Act. As discussed above, whether a copyright holder like Plaintiff has an exclusive right to public performance of his copyright depends on whether his work is registered as a "sound recording" or a "musical composition." While Plaintiff can pursue a claim based on distribution of his work under either type of registration, if Plaintiff only has a "sound recording" copyright, then he can only maintain a copyright infringement action for performances of his work by "digital audio transmission." 17 U.S.C. §§ 106(6), 114(a)); *see also* Circular 56A, United States Copyright Office (explaining the difference between "sound recording" and "musical composition" registrations).[5] If, however, Plaintiff's copyright is for a musical composition, Plaintiff can pursue an infringement action for *public* performances as well. *Id.*

While the parties appear to agree that Plaintiff has a valid copyright in his work, and Plaintiff identifies his copyright as one for a "sound recording," the parties do not address in either their opening motions or response briefs what implications that fact has on Plaintiff's claims.

---

[5] Circular 56A is publicly available at https://www.copyright.gov/circs/circ56a.pdf.

Defendant briefly raises the issue in his reply brief, arguing in a single sentence that the fact that HPW is registered as a sound recording means that "it would only be the unauthorized use of HPW's sound, and not any performance" that would be an infringement. (Dkt. 81 at 6.) But it is well established that arguments raised for the first time in a reply are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011). The Court thus finds it inappropriate to reach this issue. However, while the argument may not have been properly presented, the Court acknowledges that if Plaintiff's registration is one for a "sound recording," that would likely mean that he could only pursue an infringement action for performances by "digital audio transmission." But even if Defendant is correct on that point, the record is unclear at this stage whether Defendant's alleged acts of infringement, i.e. his performances of AWAN, were by means of "digital audio transmission," or were strictly "public performances."[6]

In any event, given that the Court is denying Plaintiff's motion for summary judgment on the other grounds actually addressed by the parties, and given that Defendant has waived this argument here, the Court need not resolve or decide the separate issue of the type of registration that Plaintiff has, and the attendant ramifications, at this stage. Prior to any trial on the merits, this additional issue will need to be resolved.[7] The Court will now turn to the parties' arguments. First, however, the Court will provide some additional standards for what Plaintiff must show to establish that AWAN is an unlawful copy of HPW.

---

[6] As noted above, Plaintiff's statement of facts states that Defendant "publicly performed" AWAN 378 times. That number comes from Defendant's answer to an interrogatory seeking the number of "live" performances of AWAN, to which Defendant responded that he had 378 concerts from April 5, 2016 to present, and "presumably AWAN was performed at each concert listed." (Dkt. 69-16 at 6-7.) But it is unclear whether that "live" performance may also involve any kind of "digital audio transmission." Further, while the statement of facts refers to the song being on YouTube, it is not clear whether that would qualify as a "digital audio transmission."

[7] Simultaneous with the issuance of this order, the Court will be scheduling a further status hearing on this case, at which point it anticipates asking the parties about their positions on this issue.

### A.     Standards for Proving Copyright Infringement

To prove unlawful copying, Plaintiff must show two things: "'(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.'" *Signature Construction*, 994 F.3d at 886 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). As the ownership of a valid copyright is undisputed at this stage, the Court proceeds to the second prong of this inquiry, which "encompasses two distinct questions." *Signature Construction*, 994 F.3d at 887. First, the copyright holder must prove, "as a factual matter, [that] the defendant copied the plaintiff's protected work (as opposed to independently creating a similar work) . . . ." *Id.* This is referred to as the "actual copying" or "copying in fact" requirement. *Id.* Second, the copyright holder must prove that "the copying 'went so far as to constitute improper appropriation.'" *Id.* (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982). This is referred to as the "substantial similarity" requirement. *Id.* at 888.[8]

"'Proof of copying by the defendant is necessary because independent creation is a complete defense to copyright infringement.'" *Signature Construction*, 994 F.3d at 887 (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. For Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Because "[d]irect evidence is rare," copyright holders must generally prove copying circumstantially. *Id.* "A circumstantial case of copying-in-fact requires: (1) evidence that the

---

[8] "Substantial similarity" is not to be confused with "probative similarity"—what a copyright holder must show to prove copying-in-fact through circumstantial evidence. *Id.* The Seventh Circuit has not always used this terminology consistently. *Id.* ("[T]he cases often use 'the same term—'substantial similarity'—to describe both the degree of similarity relevant to proof of copying and the degree of similarity necessary to establish unlawful appropriation.' . . . But [t]he term means different things in those two contexts.'" (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)). To minimize confusion, the Court will alter "substantial similarity" to "probative similarity" when it is clear that the Seventh Circuit is using the phrase "substantial similarity" to refer to the requirement of probative similarity.

defendant had access to the plaintiff's copyrighted work (enough to support a reasonable inference that the defendant had an opportunity to copy); and (2) evidence of a [probative] similarity between the plaintiff's work and the defendant's work (enough to support a reasonable inference that copying in fact occurred)." *Id.*

In rare cases, "evidence of truly striking similarity may function as a proxy for access," the rationale being that where "copying . . . is the only plausible explanation" for the similarity between two works, the defendant *must* have had access to the copyrighted work. *Design Basics, LLC v. Lexington Holmes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997) ("[C]opying entails access."). The Seventh Circuit has cautioned, however, that this "exception is 'rare' and reserved for 'unusual cases.'" *Signature Construction*, 994 F.3d at 887 (quoting *Lexington Holmes*, 858 F.3d at 1100). The burden of proving striking similarity—already high—is higher still in "crowded fields such as popular music," where "[t]he possibility of a prior common source" is especially likely. *Lexington Holmes*, 858 F.3d at 1100.

The mere fact that a copyright holder has proven that his work was actually copied by the defendant is not, in and of itself, enough to show copyright infringement. The copyright holder must *also* show that that copying, once proven, "was wrongful—i.e., that the defendant took enough of his protected expression (as opposed to unprotected ideas, concepts, facts, etc.) to constitute unlawful appropriation of his expressive work." *Signature Construction*, 994 F.3d at 887. The Seventh Circuit "uses the 'ordinary observer' test" to determine whether copying in any given case constitutes "unlawful appropriation . . . ." *Id.* at 888. That standard asks—objectively— "'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protect[a]ble expression

by taking material of substance and value.'" *Id.* (quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508–09 (7th Cir. 1994)).

Proof of *both* copying-in-fact and substantial similarity is ordinarily—but not always—enough to prove copyright infringement. The reason this showing typically suffices is straightforward. A defendant who copies a copyright holder's work in this way *necessarily* violates the copyright holder's exclusive right to either "reproduce the copyrighted work" or to "prepare derivative works based upon the copyrighted work," even if the defendant does not distribute the infringing work to the public. 17 U.S.C. § 106(1)–(2). And in most cases, the defendant will have made at least one copy of the infringing work within three years of the suit's commencement. Where this is not the case, however, a copyright holder may not prevail solely on a showing of copying-in-fact and substantial similarity—he must explain how the defendant's conduct has violated one of plaintiff's *specific* statutory rights within the statute of limitations.

Having laid out the general standards for proving copyright infringement, the Court turns next to Plaintiff's motion for summary judgment.

**B.      Plaintiff's Motion for Summary Judgment**

Plaintiff's summary judgment motion invites the Court to find Defendant liable—as a matter of law—for willful copyright infringement. (Dkt. 69, 1). In addition to damages and attorney's fees, he seeks an injunction enjoining Defendant from performing AWAN in the future. (*Id.*) In order to prevail on this motion, Plaintiff must establish—among other things—that no reasonable juror could conclude that AWAN does not copy HPW. Because he has failed to do so,

and because this issue is antecedent to Plaintiff's remaining arguments, the Court denies Plaintiff's motion in full.

As is typically the case in copyright infringement cases, Plaintiff lacks direct evidence that Defendant, or anyone else involved in the production of AWAN, copied HPW's melody.[9] Therefore, he must prove his case circumstantially. To do so, he must adduce (1) evidence that someone involved in the creation of AWAN "had access" to HPW of a kind sufficient "to support a reasonable inference that" they "had an opportunity to copy" HPW; and (2) evidence of a probative similarity between AWAN and HPW sufficient "to support a reasonable inference that copying in fact occurred." *Signature Construction*, 994 F.3d at 887. If Plaintiff cannot make a sufficient showing of access, he must show that the similarities between AWAN and HPW are "so striking as to preclude the possibility that" AWAN was created independently of HPW. *Selle v. Gibb*, 741 F.2d 896, 903 (7th Cir. 1986) (internal quotation marks omitted).

Crucially, because this case is before the Court on summary judgment, it is not enough for Plaintiff to show that a reasonable jury *could* find these things—he must make the additional showing that no reasonable juror could entertain "any explanation" for the similarities between AWAN and HPW "other than that of copying." *Selle*, 741 F.2d at 905. This is a very high bar, one that Plaintiff ultimately does not clear.

Plaintiff argues that the availability of HPW on SoundClick.com in the months preceding the creation of AWAN is sufficient to prove access. (Dkt. 69, 3) ("Kharbouch, or anyone from Kharbouch's AWAN production team could have easily accessed HPW from Soundclick.com[,]

---

[9] It ultimately does not matter, at least for the purposes of determining liability, whether Defendant himself copied HPW. Plaintiff proceeds on the theory that Defendant performed AWAN while on notice that someone involved in the production of AWAN copied HPW's melody. This could support a finding of infringement, regardless of whether Defendant himself created AWAN's underlying music or just the lyrics as he claims. Of course, if Defendant himself copied HPW, that would all but dispose of the question of willfulness.

which is a widely-known music file sharing website that is available to anyone with internet access."). But as Defendant correctly points out, the Seventh Circuit has held that "the existence of [a] plaintiff's copyrighted materials on the Internet . . . cannot by itself justify an inference that the defendant accessed those materials." *Lexington Holmes*, 858 F.3d at 1108. Because Plaintiff points to no other evidence of access besides the similarities between AWAN and HPW, his motion must be denied unless those similarities are so striking—and the possibilities of independent creation and prior common source so faint—that "copying . . . is the only plausible explanation . . . ." *Id.* at 1100.

Plaintiff dedicates much of his summary judgment briefing to this argument, averring that access *must* be inferred "because AWAN is 'shockingly similar' to HPW." (Dkt. 69, 3). In making this argument, Plaintiff relies on three sources of evidence: (1) an expert report comparing AWAN and HPW; (2) a news article published by TMZ the day Plaintiff filed suit in this case; and (3) an appeal to basic common sense.

Plaintiff understandably places greatest weight on the expert report prepared by Jonathan Pierre, an Associate Professor of Music Production at Prairie State College. (Dkt. 69-5) (report); (Dkt. 69-8) (Pierre's curriculum vitae). Pierre's analysis consists primarily of a distillation of HPW into its constituent musical motifs and a search for those motifs in AWAN. As Pierre explains, a motif is simply "a short musical idea that is brief and is used to develop longer musical expressions like melodies." (Dkt. 69-5, 3). According to Pierre, the presence of one motif (or even several) in two songs may not be suspicious, because of their simplicity. (*Id.* at 4) (reporting that two songs "may share similar constructs"). A motif, after all, can be as short as two notes. (*Id.* at 3). However, where a complex combination of motives appears in two works, it may indicate copying. (*Id.*) This

makes sense—as the complexity of duplicated music increases, it becomes more and more difficult to believe that that music was re-created independently.

Pierre describes HPW "as an arrangement of seven individual motives," six of which are duplicated by AWAN. Although Pierre's analysis found that "AWAN is shockingly similar to the expressed arrangement of motivic combinations of HPW," (*id.*), he provides little testimony on the complexity of those motives and whether similar motives exist in the public domain. Pierre does suggest that it is "extremely unlikely" that AWAN and HPW could have drawn on a prior common source, although he bases this conclusion on the "commercial success and popularity of AWAN," rather than on a discussion of how commonly the motives in HPW appear in other popular hip hop tracks. (Dkt. 69-5, 5). Although Pierre acknowledges that "producers and writers" often re-use "melodic ideas from previously recorded songs . . . to give themselves a better chance of success," he maintains that "[o]riginality in arrangement of motives and melody is a key component to the commercial success of a song and its popularity among fans." (*Id.* at 4–5).

In addition to Pierre's report, Plaintiff points to an article published by TMZ, which expresses the writers' view that "there is more than a passing similarity" between AWAN and HPW. (Dkt. 69-10). Finally, Plaintiff resorts to basic common sense, suggesting that even without the aid of expert analysis, "any reasonable observer" who listens to AWAN and HPW would "conclude that AWAN is a copy of HPW." (Dkt. 69, 4); (Dkt. 80, 3).

To show striking similarity in the crowded field of popular music, Plaintiff bears a heavy burden to "eliminate any explanation of coincidence, independent creation, or common source . . . ." *Selle*, 741 F.2d at 905 (emphasis added). In other words, "[P]laintiff must show that the similarity" between AWAN and HPW "is of a type which will preclude any explanation other than

that of copying." *Id.* at 905. Defendant argues that Plaintiff has failed to satisfy this burden, (Dkt. 78, 12), and the Court agrees.

The Seventh Circuit's opinion in *Selle v. Gibb* is instructive. In that case, a jury found that a song released by the Bee Gees—a world-famous musical group—infringed the plaintiff's copyright in a song he composed years earlier. *Id.* at 898–99. The jury returned this verdict after hearing the testimony of the plaintiff's expert witness, who "compar[ed] the musical notes of each song" and "testified . . . that, in his opinion, 'the two songs had such striking similarities that they could not have been written independent of one another.'" *Id.* at 899. The jury's verdict for the plaintiff was supported not only by this expert testimony, but also by the jury's own comparison of the songs in court. *Id.* at 903 n.3. The defendants did not "introduce any expert testimony" of their own to rebut that presented by the plaintiff.

The defendants moved for judgment notwithstanding the verdict, and the District Court granted the motion. *Id.* at 904. In affirming the District Court, the Seventh Circuit held that *no* reasonable juror could have found striking similarity, even though Plaintiff's un-rebutted expert took the unequivocal position that the two works at issue in that case could *not* have been created independently. The Seventh Circuit reached this rather striking result because, in its view, the record was insufficient to adequately preclude the possibility that each song drew on a prior common source.

The court based this conclusion on, among other things, the fact that plaintiff's expert had declined to say with certainty "that the similarities could only be the result of copying." *Id.* at 905. It also emphasized the expert's failure to testify to "the relative complexity or uniqueness of the two compositions," "testimony [it found] to be particularly necessary" in the "field . . . of popular music . . . ." *Id.* Finally, it found that plaintiff had failed to "address[] any issues relating to the

possibility of prior common source in both widely disseminated popular songs and the defendant's own compositions." *Id.*

*Selle* stands for the proposition that—at least in the crowded field of popular music—no reasonable juror can find copying-in-fact entirely on the basis of striking similarity without strong evidence eliminating the possibility of a prior common source. While to the Court's untrained ear, AWAN is similar to HPW and Plaintiff's evidence in this case is in some respects better than that presented to the jury in *Selle*, it is not strong enough to warrant the entry of summary judgment. Plaintiff's expert addresses the possibility of prior common source, but his analysis on that issue rests entirely on the theory that because AWAN was popular, it was likely original. As Defendant argues, this is rather speculative and fails to account for Defendant's "fame as a music performer . . . ." (Dkt. 78, 13). Further, Plaintiff's expert does not analyze the complexity of HPW's seven motives and the frequency with which those motives appear in other popular hip-hop songs in the public domain.

For these reasons, the Court holds that Plaintiff has not established striking similarity— and, therefore, copying-in-fact—as a matter of law. At trial, Plaintiff may well prove to the satisfaction of the jury that the similarities between AWAN and HPW can only be explained by copying. But on the record before the Court, that is a question the jury must decide. Mindful of the Seventh Circuit's admonition that striking similarity is "rare and reserved for unusual cases," *Signature Construction*, 994 F.3d at 879 (internal quotation marks omitted), the Court denies Plaintiff's motion for summary judgment on liability.

Plaintiff's two remaining arguments—that Defendant infringed his copyright in HPW willfully and that he is entitled to injunctive relief barring Defendant from performing AWAN in the future—both assume that Defendant is liable for copyright infringement. Because the Court

holds that Plaintiff has not established Defendant's liability as a matter of law, the Court need not reach these remaining arguments.

### C. Defendant's Motion for Partial Summary Judgment

Although Defendant describes his motion for summary judgment as one for "summary judgment or partial summary judgment," (Dkt. 75, 1), nowhere in his opening brief does he assert any argument, or combination of arguments, that would, if accepted, warrant the entry of summary judgment on both counts of Plaintiff's complaint. Instead, Defendant seeks partial summary judgment on five "issues that are ripe for determination on summary adjudication." (Dkt. 66, 6).

Those issues are as follows:

- *first*, that, under 17 U.S.C. § 507(b), "Plaintiff cannot recover or seek any damages" for acts of infringement occurring "prior to April 5, 2016," (*id.* at 8);

- *second*, that because Plaintiff has not adduced any evidence of actual economic harm, he is limited to statutory damages, (*id.* at 11);

- *third*, that because statutory damages are calculated on a per-work basis, rather than on a per-infringement basis, Plaintiff is limited to one award of statutory damages, (*id.* at 9);

- *fourth*, that the summary judgment record "supports, if at all, a finding of innocent infringement," (*id.* at 13); and

- *fifth*, that any infringement, if not innocent, was at least non-willful. (*Id.* at 15).

In his opposition brief, Plaintiff expressly concedes the first two of these five arguments, agreeing that he can seek relief only for acts of infringement committed "since April 5, 2016" and electing statutory damages under 17 U.S.C. § 504(c)(2). (Dkt. 79, 3). Furthermore, because Plaintiff did not respond to Defendant's argument that Plaintiff is eligible for, at most, one award of statutory damages in this case, he has conceded this issue as well. The Court will therefore grant Defendant's motion for summary judgment on each of these three issues.

That just leaves Defendant's related arguments that any infringement in this case was innocent, or at least non-willful. The Court will address the issue of willfulness first because a denial of summary judgment on that issue necessitates the denial of summary judgment on the issue of innocent infringement as well.

Willfulness is "an issue of fact" implicating the defendant's state of mind. *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991). In the Seventh Circuit, "a finding of willfulness is justified 'if the infringer knows that [his] conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right[s].'" *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511–12 (7th Cir. 1994) (quoting *Video Views*, 925 F.2d at 1020–21). "[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." *Video Views*, 925 F.2d at 1021.

"[W]illfulness [is] ordinarily . . . demonstrated where the infringer is provided oral or written notice of its infringing conduct by the copyright owner, yet 'passe[s] the matter off as a nuisance.'" *Id.* at 1021 (quoting *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 381 (7th Cir. 1988)); *Wildlife Express*, 18 F.3d at 512 ("[I]n determining whether [a] violation was willful, the trier of fact may consider evidence that the defendant ignored the plaintiff's notices about copyright protection, did not seek advice of an attorney, and passed the matter off as a nuisance.") "When questions concerning the quality of the notice of infringement arise, the trier of fact must determine the weight that ought to be accorded to the notice in deciding whether the violation was willful." *Wildlife Express*, 18 F.3d at 512.

Defendant contends that "Plaintiff cannot prove that any alleged infringement" in this case "was willful." (Dkt. 66, 13). Although he admits that Plaintiff expressed "concerns about

infringement" to him during their May 5, 2013, Twitter exchange, (Dkt. 66-1, fact #5), Defendant emphasizes that Plaintiff "never again corresponded with [him] regarding" AWAN after he recommended that Plaintiff take the issue up with Rico Love. (Dkt. 66, 15). This fact, he argues, coupled with "Plaintiff's delay in filing suit," justified his belief that Rico Love was "the legitimate producer of AWAN." (Dkt. 66, 15).[10] Finally, Defendant argues that commencement of this action by Plaintiff did not provide "constructive notice" from which the jury could find willfulness. (*Id.* at 13–14).

Plaintiff responds that his Twitter conversation with Defendant was more than enough to put Defendant on notice of potential infringement. (Dkt. 79, 2) ("Richardson contacted Kharbouch directly to notify him of the infringement."). He argues that the fact that Defendant "continued to perform AWAN at public venues around the world," including "during the pendency of this action," support a finding of willfulness. (*Id.*)

The challenge for Defendant is that his theory of non-willfulness requires the jury to believe that he subjectively interpreted Plaintiff's subsequent silence as indicating that Love was the "legitimate producer" of AWAN's melody. (Dkt. 66, 15). Whether this was or was not the case can only be determined by weighing the credibility of Defendant's testimony, a quintessential jury function. *Wildlife Express*, 18 F.3d at 512. Furthermore, this is not a case lacking evidence of notice. Defendant himself acknowledges that he received notice of potential infringement. (Dkt. 66-1, fact #5). Only a jury can decide whether Defendant's conduct after receiving this notice was reasonable.[11]

---

[10] Defendant also argues that Plaintiff "ceased to believe [that] Love stole his beat" after he spoke with him. (Dkt. 66, 15). As the Court previously explained, this is not true. Plaintiff believed that Love *might* have stolen his beat, but could not prove it.

[11] The Court also disagrees with Defendant that the commencement of this action is irrelevant to the question of willfulness. While the Court agrees that the mere act of filing cannot provide constructive notice to Defendant, it almost certainly was a source of *actual* notice in this case. To the extent this lawsuit gave Defendant another reason

For these reasons, the Court finds there is a genuine dispute of fact as to whether any alleged infringement was willful, and therefore denies Defendant's motion for partial summary judgment on this issue. The Court's denial of Defendant's request for partial summary judgment on the issue of willfulness also requires it to deny Defendant's motion for partial summary judgment on the issue of whether any alleged infringement was innocent. Under 17 U.S.C. § 504(c)(2), infringement is only innocent if the Defendant "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." By definition, if there is a genuine issue of fact on willfulness—which requires a showing that Defendant acted with knowledge of infringement or a reckless disregard of the copyright holder's rights—there is a genuine issue of fact whether Defendant had any "reason to believe that his or her acts constituted an infringement of copyright." *Id.* A defendant with *no* reason to believe that his conduct might constitute infringement by definition cannot act with knowledge or reckless disregard. In short, genuine disputes of fact preclude summary judgment on the issue of whether Defendant's alleged infringement was willful or innocent.

As noted above, Defendant raises other new arguments in his reply related to the type of registration at issue and whether Plaintiff has a right to performances. Such arguments, if correct, might significantly limit or even dispose of Plaintiff's claims in this case. However, as already discussed, because neither of these arguments was raised in Defendant's opening brief but only in reply, Plaintiff had no opportunity to respond to them. At this juncture, then, they are waived. *Mendez*, 646 F.3d at 423–24 ("[I]t is well-established that arguments raised for the first time in [a] reply brief are waived.").

---

to question the propriety of performing AWAN, it is yet more evidence for the jury to weigh in assessing his state of mind.

**Conclusion**

For the forgoing reasons, the Court grants Defendant's motion for summary judgment in part and denies it in part. The motion is granted to the extent that Plaintiff is limited to recovering only for any acts of infringement occurring after April 5, 2016, is limited to statutory, and not actual damages, and further is limited to one award of statutory damages. The motion is denied as to the issues of the willfulness or innocence of any alleged infringement. The Court further denies Plaintiff's motion for summary judgment in full.


Dated: March 30, 2023                    _____
                                          Nancy L. Maldonado
                                          United States District Judge

29