IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| EDDIE LEE RICHARDSON AKA HOTWIRE THE PRODUCER | ) ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | CASE NO: 1:19-CV-2321 |
| KARIM KHARBOUCH AKA FRENCH MONTANA | ) ) ) | Judge Nancy Maldonado |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION**

On July 12, 2023, this Court ordered the Parties to brief the issue of whether Defendant, by his alleged actions, can be held liable for public performances by digital audio transmission of Plaintiff's registered sound recording. Dkt. 90. The answer is YES for the reasons that follow:

**I.    AWAN is a Sampling of the Sounds of HPW.**

The owner of a copyright has the exclusive rights to reproduce the copyrighted work; and prepare derivative works based on the copyrighted work. 17 US Code § 106 (1)-(2). The Copyright Act, however, distinguishes a musical work from a sound recording. 17 US Code § 114. The Copyright Office states that owners of musical works have exclusive rights to the underlying "melody" or "rhythm"[1] of their work, while owners of sound recordings have exclusive rights to a particular "fixation of a series of sounds[2]". US Copyright Office *Circular 56A* Rev 03/2021 at p.1-2; Fact #2. The exclusive rights of the owner of copyright in a sound

---

[1] See US Copyright Office Circular 56A Copyright Registration of Musical Compositions and Sound Recordings Terms "melody" and "rhythm" interchangeably define what is copyright protectable in musical works. *Id*. at p. 1.
[2] Music, voices, or other sounds are copyright protectable as sound recordings. See sound-recordings-vs-musical-works.pdf (copyright.gov) US Copyright Office "Musical Works, Sound Recordings & Copyright" Feb. 2020 at p. 1.

1

recording under 106(1)-(2) do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of sounds, even though such sounds imitate or simulate those in the copyrighted sound recording. 17 US Code § 114(b).

For example, if AWAN was simply hummed or whistled to imitate HPW then AWAN would be an **entirely independent** fixation of sounds because in that case AWAN would **consist only of sounds not contained in HPW**. *Id*.; Fact #1. Here, any jury at trial will hear the sounds of HPW sampled in AWAN such as the arrangements of the snare, 808, high hat, rim shot, cymbal, low brass, piano bells, tubular bells, kick drum, strings, soft leads, hard leads, and orchestra hits[3]. Fact #1. These same series of sounds are offered as evidence in the Complaint where Plaintiff provides links to HPW on Soundclick.com and AWAN on YouTube.com and Music.Apple.com where the *same sounds* can be heard. *Id*; Dkt. 51 at ¶9, ¶18, ¶21, ¶22.

In the music industry, particularly hip/hop and rap the "digital sampling"[4] of a series of sounds from earlier sound recordings (or songs) happens frequently, but "a sound recording owner has the exclusive right to 'sample' his own recording." *Bridgeport Music v. Dimension Films,* 410 F.3d 792, 799, 801 (6th Cir. 2005).

Defendant now mischaracterizes Plaintiff's claim to say that he claims *only* the melody of HPW as a musical work. The plain reading of the Complaint, however, shows that Plaintiff claimed both the sounds and melody of HPW:

"***HPW consists of a unique and artistic array of digital sounds <u>and</u> rhythms*** without lyrics or vocals." Dkt. 51 ¶ 8. "On October 7, 2012, ***Richardson uploaded HPW to SoundClick.com, which is a well-known online audio distribution platform*** and music

---

[3] See Affidavit of Plaintiff October 6, 2023; Ex. 1.
[4] Digital sampling is the use of digital audio equipment to record the sounds from an earlier (original) song to save time and money when creating another song. See *Bridgeport Music,* 410 F.3d 792, 799 at Footnote 7.

sharing website *that enables its users to* upload, promote, and *share audio*. *See* **https://www.soundclick.com/html5/v3/player.cfm?type=single&songid=11932520&q=hi&newref=1"** *Id*. at ¶ 9. "*Karbrouch* and/or his agents published*, performed*, and widely distributed *a derivative work of HPW entitled 'Ain't Worried About Nothin' ('AWAN')*". *Id*. at ¶ 14. "*The melody of AWAN,* exclusive of the lyrics and vocals*, is nearly identical to HPW*". *Id*. at ¶ 15. "According to an expert analysis of the two works, *the melody of AWAN 'contains an arrangement of <u>six</u> of the <u>seven</u> motives[5] of HPW* in the introduction and subsequent sections, including all verses, choruses, and breakdowns'...*See* Exhibit 2; 2A-2B, 'Opinion Report Re: The Infringement of Plaintiff's Work', Jon Pierre Music (October 24, 2019) <u>emphasis</u> <u>added</u>. *Id*. at ¶ 16; Facts #1,3; *Emphasis added* <u>Emphasis</u> <u>added</u>.

The Complaint claims both the "sounds" <u>and</u> "rhythms" of HPW then provides a link to Soundclick.com where the sounds of HPW can be heard as evidence. *Id*. Plaintiff alleges the Defendant infringed by, *inter alia*, performing a derivative of HPW. *Id.* Plaintiff additionally claims infringement of the "melody" of HPW and cites from an expert opinion on the melody of HPW as evidence. *Id*. In light of Defendant's new objection[6] to Plaintiff's claim to the melody of HPW, Plaintiff proceeds on his claim to AWAN for the series of sounds sampled from HPW for which he is entitled the exclusive rights to under the Copyright Act. 17 US Code § 106(1)-(2); §114(b); *Bridgeport* at 801. Accordingly, Defendant's new objection is a moot point given that AWAN is a sampling of the "*digital sounds*" of HPW-not just a copy of its melody or rhythms which is still unlawful infringement. *Id.*; Facts #1,3; Dkt. 51 ¶ 8. *Emphasis added*.

---

[5] A "motif" or "motives" are short musical ideas that are brief and used to develop longer musical expressions like melodies. See Exhibit "Opinion Report Re: The Infringement of Plaintiff's Work", Jon Pierre Music (October 24, 2019) *3.

[6] This Court noted Defendant raised the issue for the first time in his Reply brief for summary judgment. Dkt. 90.

**II.     Defendant Publicly Performs and Contributes to the Public Performances of HPW by Digital Audio Transmissions.**

The Copyright Act provides that the owner of a sound recording has the exclusive right to perform the copyrighted work publicly by means of a digital audio transmission. 17 US Code § 106(6). The Copyright Act defines public performance by digital audio transmission as a partially or entirely digital transmission of a sound recording from *any device, machine, or process* to the public or a place that is open to the public whether members of the public can receive that performance in the same place and time or different places and times.  17 US Code § 101, 106(6), 114(d).  *Emphasis added.*

Concert performers in the music industry, particularly in hip/hop and rap rely on "backing tracks" and computer programs like "Pro Tools" to "mix" prerecorded sounds with live vocals of the performer and digitally transmit those combined sounds to concertgoers using an iPod-like a karaoke machine[7]. Fact #5. In fact, it is "very common in Hip Hop that a vocalist will rap to a track usually provided by a DJ or even someone just running a laptop or iPod." "*What are Backing Tracks and Why do they Matter?*" creativelive.com Doc Coyle, April 6, 2015 at 3-4; Fact #5. Defendant necessarily relies on the prerecorded sampled sounds of HPW as backing to his vocals whenever he performs the lyrics to AWAN at concerts because Defendant states he is "merely a vocalist". Facts #4-6*;* Dkt. 75 at p. 14. Defendant's concert performances of AWAN would necessarily use digital audio equipment to mix and transmit the sounds of HPW to the concertgoers. Facts #4-8. For example, Avid Venue, a provider of professional concert stage digital audio equipment advertises in their brochure as follows[8]:

---

[7] This Court may take judicial notice of this Fact: See What Are Backing Tracks And Why Do They Matter? (creativelive.com) Doc Coyle, April 6, 2015.
[8] This Court may take judicial notice of this Fact: See avidvenues6lbrochure.pdf Avid Technology, Inc. (2020)

4

**CONCERT SOUND From small club tours and regional shows, to large concert arenas, festivals, and broadcast events**, VENUE | S6L provides the sheer power, unsurpassed sound quality, and proven reliability you need, whether you're mixing front of house, monitors, or in the remote truck. › FRONT OF HOUSE—With its **super-high processing channel counts**, S6L is ideal for large music festivals, enabling you to load guest engineers' VENUE show files into the system to support multiple artists, so they can **get set up and running almost instantly**. It **accommodates up to 192 mic inputs** and supports I/O sharing to handle multiple stages. Trigger snapshots and events remotely using the free VENUE | Function Pad iOS app. Plus, you can record **128 Pro Tools tracks**, making future revenue generating opportunities easy. › MONITORS— With its **massive mix bus capacity**, S6L makes it <u>**easy to handle**</u> dozens of in-ear **monitor mixes, wedge mixes, and backline mixes on the fly**, with immediate one-touch access to any mix on the faders. <u>**Mix with confidence**</u> through two independent stereo solo busses, each assignable to any physical output for connection to a cue belt pack and/ or listen wedge. <u>**Wirelessly control**</u> Aux master levels, send levels, and pans remotely— and <u>**even let performers control their own monitor mixes**</u>—**using** the free VENUE | On-Stage app for **iPhone and iPad**. › BROADCAST—S6L delivers the sound integrity, **processing channels, routing capabilities**, and Pro Tools workflows remote truck mix engineers need to <u>**broadcast and record live shows for the masses.**</u> Easily network with your fellow FOH and monitor engineers to share the same live inputs, without having to split signals. **Emphasis added**. <u>**Emphasis** added</u> **Avid Venue S6L Brochure (2020) p. 10.** Fact #7.

5

Accordingly, a jury **can** find that Defendant broadcasts digital audio transmissions of the sampled sounds of HPW at every concert performance of AWAN, and in violation of 17 US Code § 106(6). *Id.*; Facts #7-8. In fact, Defendant has all but admitted to have done so at least 378 times during the statutory period[9]. Fact #9.

Copyright law further provides that Defendant can be held liable for contributing to the digital audio transmissions of HPW by third parties, such as YouTube and Apple Music by Defendant facilitating the performances of HPW on those websites with knowledge of the infringement, as alleged in the Complaint. See *In re Aimster*, 334 F.3d 643, 645-46, 649 (7th Cir. 2003); Facts #3,16; Dkt. 51 at ¶17, ¶18, ¶22, ¶26, ¶37, ¶43. Defendant has known since 2013 that AWAN is an infringement of HPW which is when Plaintiff contacted Defendant on Twitter to demand credit for AWAN. Fact #16; Dkt. 51 at ¶17. Plaintiff provided Defendant a link to Soundclick.com where the same sounds of Plaintiff's HPW can be heard in AWAN. *Id*. Defendant's response was to tell Plaintiff to go contact someone else. *Id.* Defendant went on to "distribute AWAN on Apple Music" and "publish and distribute AWAN to YouTube.com…in total disregard for Richardson's notice of infringement." Fact #3; Dkt. 51 at ¶18; ¶22, ¶37, ¶43. The Seventh Circuit, however, says that in regards to the Defendant's knowledge of the infringement "willful blindness is knowledge in copyright law". *In re Aimster* at 650. Further, this Court has previously ruled that Plaintiff can recover "for any acts of infringement occurring after April 5, 2016". Dkt. 85.

Accordingly, a jury **can** find Defendant liable for contributing to the infringement of HPW on YouTube by the Defendant using his YouTube channel to vastly transmit performances of AWAN and knowingly cause <u>continual</u> digital audio transmissions of the sampled sounds of

---

[9] This Court ruled that Plaintiff can recover for <u>any acts of infringement</u> that occur after April 5, 2016. Dkt. 85.

HPW to be sent out to the public through YouTube servers, and the internet over 98 million times[10] within the statutory period. *Id.*; Fact #10. A jury **can** find Defendant liable for contributing to the infringement of HPW on Apple Music by Defendant using his affiliation with Apple Music to knowingly cause <u>continual</u> digital audio transmissions of HPW to be sent out to the public through the internet, and Apple's website[11] within the statutory period. *Id.;* Fact #11.

Further, performers such as Defendant may register sound recordings such as AWAN with Publishing Rights Organizations (PROs) like the American Society of Composers, Authors, and Publishers (ASCAP) and Broadcast Music Inc (BMI) which in turn license out the public performances by digital audio transmissions of those sound recordings to other parties for various commercial uses such as for use in broadcasted commercial advertisement of products and services, and audio entertainment for patrons at bars, restaurants, and attractions[12]. Fact #12. These PROs track the usage of the sound recordings in public performances and pay out royalties to performers, like Defendant, for every performance[13]. *Id*.

Here, Defendant has in fact registered AWAN with ASCAP according to these PROs' databases[14]. Fact #13. Defendant refused to answer any questions related to his income from AWAN during discovery[15] thereby delaying Plaintiff's new allegation of Defendant's use of HPW with PROs. Fact #14. A jury, however, **can** find that Defendant knowingly facilitates the <u>continual</u> digital audio transmissions of HPW broadly and widely to the public within the statutory period through his use of PROs; and find the Defendant liable for contributing to those

---

[10] See https://youtu.be/PD6AfcoG4o8 French Montana, May 7, 2013; 98,489,841 Views as of October 6, 2023.
[11] See Excuse My French by French Montana on Apple Music music.apple.com. "Excuse My French"; French Montana Hip-Hop/Rap 2013; track no. 3; "Ain't Worried About Nothin".
[12] This Court may take judicial notice of this Fact: See Licensing | BMI.com Broadcast Music Inc (2023); ASCAP Licensing ASCAP (2023)
[13] This Court may take judicial notice of this Fact: See Creators | BMI.com Broadcast Music Inc (2023); ASCAP Payment System: Introduction | how does ascap pay, royalties, licensing, ASCAP (2023)
[14] ASCAP has a 30% share of AWAN performances; See ACE Repertory (ascap.com) ASCAP (2023)
[15] Failure to cooperate during discovery is <u>sanctionable</u>. Fed. R. Civ. P. 37.

infringements. *Id.; In re Aimster*, at 649-50.

The Seventh Circuit adds that "a copyright owner who can prove infringement need not show that the infringement caused him a financial loss…he can obtain statutory damages, or an injunction, just as the owner of physical property can obtain an injunction against a trespasser without proving that the trespass has caused him a financial loss." *Id.* at 649. Accordingly, Plaintiff's limitation to recovering statutory, and not actual damages[16] does not diminish the Plaintiff's right to the enjoinment of the Defendant from performing the sampled sounds of HPW or contributing to those performances through third parties. *In re Aimster*, at 649-50; *Bridgeport* at 801; 17 US Code § 106(6).

### III. Defendant has no Exemption from Liability.

The Copyright Act provides that *only* Federal Communications Commission (FCC) licensed broadcaster transmissions are exempt from liability for the public performances of sound recordings. 17 US Code § 114(d). The US Copyright Office plainly explains this "means that AM/FM radio stations do not have to get permission (or pay royalties) to publicly perform sound recordings…***anyone else who wants to use a sound recording must get a license***"[17]. US Copyright Office *Sound Recordings vs Musical Works* Feb. 2020; Fact #15. ***Emphasis added***. Defendant has no license and no statutory exemption to publicly perform the sampled sounds of HPW, or facilitate those public performances through third parties.

---

[16] This Court's previous memorandum opinion limits Plaintiff to recovering statutory, not actual damages. Dkt. 85.
[17] See sound-recordings-vs-musical-works.pdf (copyright.gov) US Copyright Office "Musical Works, Sound Recordings & Copyright" Feb. 2020

Accordingly, **Defendant <u>can</u> be held liable at trial** to Plaintiff for injunctive relief [18] and statutory damages for Defendant's public performances of HPW at concerts; and for contributing to the public performances of HPW through third parties YouTube, Apple Music; and ASCAP; and for any other actions or means by which the Defendant unlawfully performs, or contributes to the unlawful public performances of Plaintiff's sound recording. *In re Aimster*, at 649-50; *Bridgeport,* at 801; 17 US Code § 101; 17 US Code § 106(6); 17 US Code § 114.

**WHEREFORE, Plaintiff requests that this Court decide the preceding issue in the AFFIRMATIVE and FIND that Defendant CAN be held liable at trial to Plaintiff for injunctive relief and statutory damages for all actions and means described herein by which Defendant unlawfully performs and contributes to the unlawful public performances of Plaintiff's sound recording by digital audio transmissions.**

---

[18] This Court previously denied Plaintiff's motion for summary judgment for injunctive relief and statutory damages and set this matter for trial. Dkt. 85; Dkt. 87. The arguments for Plaintiff's injunctive relief are not argued in this Response pursuant to this Court's order to not relitigate issues raised in the previous round of summary judgment motions. Dkt. 90.

*[signature]*

**Tyiase Hasan, *Esq*.**
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE LEE RICHARDSON AKA ) | |
| HOTWIRE THE PRODUCER ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CASE NO: 1:19-CV-2321 |
| ) | |
| KARIM KHARBOUCH AKA ) | |
| FRENCH MONTANA ) | Judge Nancy Maldonado |
| ) | |
| Defendant. ) | |

## **CERTIFICATE OF SERVICE**

The undersigned Attorney certifies that he caused a true and correct copy of Plaintiff's Response in Opposition to Defendant's Motion and all supporting documents thereof to be served on:

| | |
|---|---|
| Dariush Adli, *Esq*. (ARDC No. 204959) | Michele Katz, *Esq*. (ARDC No. 6273985) |
| ADLI Law Group, P.C. | Advitam IP LLC |
| **Attorney for Defendant** | **Attorney for Defendant** |
| 700 S. Flower Street, Suite 1220 | 150 S. Wacker, Suite 2400 |
| Los Angeles, CA 90017 | Chicago, IL 60606 |
| adli@adlilaw.com | mskdocket@advitamip.com |

Counsels for Defendant, by filing the same in this District's CM/ECF system with email notice of the same to Defendant's Counsels on this 6TH day of OCTOBER 2023.

                                                                                 Tyiase Hasan, *Esq*.
                                                                                Attorney for Plaintiff
**Tyiase Hasan, *Esq*.**                                                   IL ARDC No. 6313009
**Law Office of Tyiase H. Hasan**
**22 W. Washington, Suite 1500**
**Chicago, IL 60602**
**(312) 468 – 7280**
**info@tyiaseatlaw.com**

11