UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE LEE RICHARDSON AKA HOTWIRE THE PRODUCER<br><br>Plaintiff,<br><br>v.<br><br>KARIM KHARBOUCH AKA FRENCH MONTANA,<br><br>Defendant. | Case Number: 1:19-CV-2321<br><br>Judge: Hon. Nancy L. Maldonado |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS REPLY TO PLAINTIFF'S OPPOSITION FOR SUMMARY JUDGMENT**

Defendant Karim Karbouch aka French Montana ("Defendant"), by and through his attorneys, Dariush Adli of ADLI Law Group, P.C. and Michele S. Katz of Advitam IP, LLC, submits the following Memorandum of Points and Authorities in Support of its Reply to Plaintiff's Opposition for Summary Judgement ("Opposition").

### A. Plaintiff has not Provided <u>Any</u> Evidence to Support that AWAN Samples HPW.

The Opposition baldly asserts that "AWAN is sampling of the sounds of HPW." However, Plaintiff does not provide any evidence to support its contention that AWAN contains a sample of HPW and further fails to cite to any authority for the arguments it makes in that regard.

To begin with, Plaintiff appears to misunderstand and likely deliberately mischaracterizes the concept of sampling by stating that "AWAN is a *Sampling of the Sounds* of HPW." This mischaracterization is disingenuous because there is no such concept as "sampling of the sounds" but, rather, a sampling of a <u>sound recording</u>. Black's Law Dictionary defines "'sampling" as the process of taking a small portion of a **sound recording** and digitally manipulating it as part of a new recording." SAMPLING, Black's Law Dictionary (11th ed. 2019) (emphases added). "Sampling involves taking part of an existing **sound recording** and incorporating it into a new work."[1] Sampling, Interpolations, Beat Stores and More: An Introduction for Musicians Using Preexisting Music, United States Copyright Office (emphasis added). "Sampling means incorporating parts of an

---

[1] https://www.copyright.gov/music-modernization/educational-materials/Sampling-Interpolations-Beat-Stores-and-More-An-Introduction-for-Musicians-Using-Preexisting.pdf

**original recording** directly into a new one. The longer the incorporated sample, the less likely the use will be lawful. *See* 17 U.S.C. § 107(3).) *Johnson v. UMG Recordings, Incorporated* (7th Cir. 2016) 663 Fed.Appx. 478, 479 (emphasis added). Nowhere in its Opposition does Plaintiff identify any portion of the recording or provide any other evidence that shows or suggest that AWAN samples the sound recording of HPW.

In support of its purported assertion that "AWAN is a sampling of the sounds of HPW," Plaintiff states that "if AWAN was simply hummed or whistled to imitate HPW then AWAN would be an entirely independent fixation of sounds because in that case AWAN would consist of sounds not contained in HPW." [Dkt. 92 at 2]. Plaintiff further argues that:

> the melody of AWAN is nearly identical to HPW. According to an expert analysis of the two works, the melody of AWAN contains an arrangement of six of the seven motives of HPW in the introduction and subsequent sections, including all verses, choruses, and breakdown.

[*Id*. at 3].

From the above, the Opposition improperly jumps to the conclusion that "Defendant's new objection is a moot point given that AWAN is a sampling of the "Digital Sounds" of HPW – not just a copy of its melody or rhythms." [Id. at 3]. None of the arguments by Plaintiff show that AWAN samples the sound recording of HPW and such arguments are not only an incorrect and disingenuous analysis of Copyright law **but they are frivolous as they have no foundation in fact or law**.

3

Undeterred, Plaintiff, without any support, continues:

[A]ny jury at trial will hear the sounds of HPW sampled in AWAN such as the arrangements of the snare, the 808, high hat, rim shot, cymbal, low brass, piano bells, tubular bells, kick drum, strings, soft leads, hard leads and orchestra hits.

[*Id*. at 2.]

As Plaintiff's counsel is well aware, the use of these elements does not show that there was any sampling of the HPW sound recording itself.

Plaintiff's Exhibit 5 submitted with its Opposition, clarifies this point by noting that for example "the composition "Respect" and a recording of Aretha Franklin singing "Respect" are two distinct works. The composition itself (i.e., the music and lyrics) is a musical composition, and a recording of an artist performing that composition is a sound recording." [Dkt. 92-5, at 2]. The song "Respect" is written by and originally recorded by Otis Redding.[2] In this example, Otis Redding is the owner of the Copyright in a sound recording for his recorded performance of the song "Respect" and a separate Copyright in the musical composition including the melody and lyrics. Aretha Franklin is the holder of a Copyright in a sound recording only. A third artist, who creates a song that has a "*melody*, exclusive of the lyrics and vocals, [is] nearly identical to" the song "Respect" [Dkt. 92 at 3] that "contains an arrangement of six of the seven *motives* of [the song Respect] in the introduction and subsequent sections, including all verses, choruses, and breakdown" [*Id*.

---

[2] https://en.wikipedia.org/wiki/Respect_(song)

at 3] has similar "similar arrangements of the snare, 808, high hat, rim shot, cymbal, low brass, piano bells, tubular bells, kick drums, strings, soft leads, hard leads and orchestra hits" [*Id*. at 2] is not infringing on Aretha Franklin's or Otis Redding's rights in a sound recording regardless of how similar each of the compositions sound and whether or not they share the same "series of sounds" as asserted by Plaintiff, unless a portion of either or both of the sound recording has been used.

As discussed in Defendant's motion for summary judgment, there must be some evidence of sampling, meaning a showing that a portion of the sound recording itself was copied or misappropriated, and without such evidence a reasonable jury cannot find that there was Copyright infringement of Plaintiff's alleged rights in a sound recording.

Thus, in the present case there can be no genuine issue of material fact as to whether there was any copying of the HPW sound recording by Defendant and summary judgement is appropriate to find no Copyright infringement.

### B. There is No Evidence on the Record to Suggest that Defendant's Public Performances were Done Via Digital Audio Transmission

Contrary to Plaintiff's allegations, there is no evidence on the record to suggest that Defendant's public performances were done via digital audio transmission and Plaintiff's arguments in that regard are unsupported by case law and/or the record.
As an initial matter Defendant points out that Plaintiff appears to misstate the law on which it relies, purporting:

> The Copyright Act defines public performance by digital audio
> 
> transmission as a partially or entirely digital transmission of a sound

5

recording from any device, machine, or process to the public or a place that is open to the public whether members of the public can receive that performance in the same place and time or different places and times. 17 US Code § 101, 106(6), 114(d).

[Dkt 92, §II at 4].

Perplexingly, the purported law **cannot** be found in either 17 U.S.C. §101, 17 U.S.C. §106(6) and/or 17 U.S.C. §114(d).

17 U.S.C. §101, defines "a 'digital transmission' is a transmission in whole or in part in a digital or other non-analog format." 17 U.S.C. §106(6) only references digital audio transmission, that "in the case of sound recordings, to perform the copyright work publicly by means of a digital audio transmission. 17 U.S.C. §114(d) identifies the limitations on the exclusive rights provided under 17 U.S.C. §106(6) and nowhere in the text does it state or allude to "any device, machine or process." The term "machine" is nowhere to be found in 17 U.S.C. §114, the term "process" is used in 17 U.S.C. §114(d) to state that "the performance of a sound recording publicly by means of a digital audio transmission, other than as part of an interactive services, is not an infringement of section 106(6) if the performance is party of – (B) a retransmission of a nonsubscription broadcast transmission: provided that in the case of a retransmission of a radio stations broadcast transmission – (ii) the retransmission is of a radio station broadcast transmission that are – (II) not electronically processed by the transmitter to deliver separate and discrete signals." 17 U.S.C. §114(d)(B)(ii)(II).

17 U.S.C. §101, defines "to 'transmit' a performance or display is to communicate

6

it by any device or process whereby images or sounds are received beyond the place from which they are sent." Transmit, definition 17 U.S.C. §101. Assuming *arguendo*, this is the section Plaintiff is relying on to support its position, Plaintiff fails to address the portion of the definition that the "sounds received [are] beyond the place from which they are sent" *Id*, and that it must be done by digital audio transmission.

The legislative history and case law, demonstrates that live performances without more do not implicate digital audio transmission.

> The motivating force behind Congress' creation of the limited public performance right [for a sound recording] was the desire to protect record companies and recording artists from a reduction of record sales threatened by technological developments, specifically interactive and subscription services made possible by the emergence of digital audio services capable of delivering high-quality transmissions of sound recordings. Such transmissions would enable subscribers in their homes to obtain direct, time-certain transmissions of specific sound recordings. See id. at 14–15; H.R.Rep. No. 104–274 at 5–9, 12–13 (1995) ("1995 House Report").

*Bonneville Intern. Corp. v. Peters* (E.D. Pa. 2001) 153 F.Supp.2d 763, 767, aff'd (3d Cir. 2003) 347 F.3d 485.

In that regard, "Congress afforded the owner of the copyright to a sound recording the narrow but exclusive right "to perform the copyrighted work publicly by means of a digital audio transmission," id. §§ 106(6), 114(d); in effect, this assured the copyright

7

owner the ability to charge a royalty for a license to play its work on a satellite radio service (SRS). *SoundExchange, Inc. v. Librarian of Congress* (D.C. Cir. 2009) 571 F.3d 1220, 1222.

This is further supported by 17 U.S.C. §106, where the performance rights in a sound recording are specifically qualified under §106(6). If Congress intended to provide protection against all public performances for a sound recording, it would confer such rights under §106(4) without carving out the additional limitations of §106(6).

Thus, in the case at bar, there is no evidence or authority to suggest that the alleged live performances were by means of digital audio transmission, meaning, they were broadcast through an interactive service by Defendant.

Plaintiff's arguments, that "concert performers in the music industry, particularly in hip/hop and rap rely on 'backing tracks' and computer programs like 'Pro Tools' to 'mix' prerecorded sounds" [Dkt. 92 at 4] in support of digital audio transmission is misplaced and Plaintiff neither sites to the record nor the cites to case law. Further Plaintiff identifies this assertion as "Fact 5", which is not in the record and is improperly identified as a fact. Plaintiff improperly requests that this Court take judicial notice of this assertion, however "the court may judicially notice a fact that is not subject to reasonable dispute because it: can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. Rules of Evidence 201(b)(2). This cited reference from "creative.com" and its assertions are subject to reasonable dispute and are not appropriate subjects for judicial notice. On the same basis, Plaintiff also improperly requests judicial notice of "Fact 7", that "hip/hop vocalist performers use digital audio equipment at concerts

8

to easily mix and transmit sound recording to concertgoers." [Dkt. 92-1].

Plaintiff's next argument states that "Copyright law further provides that Defendant can be held liable for *contributing* to the digital audio transmissions of HPW by third parties, such as YouTube and Apple Music by Defendant facilitating the performances of HPW on those websites with knowledge of the infringement, as alleged in the Complaint. *See In re Aimster*, 334 F.3d 643, 645-46, 649 (7th Cir. 2003); Facts #3,16; Dkt. 51 at ¶17, ¶18, ¶22, ¶26, ¶37, ¶43." [Dkt. 92 at 6]. The arguments falls flat because the case law cited in the Opposition fails to address digital audio transmission and most importantly, Plaintiff is not claiming contributory infringement in its Operative Complaint, its only two claims are (1) Copyright Infringement and (2) willful Copyright infringement [Dkt. 51], thus this argument is irrelevant and frivolous.

Plaintiff's third argument is that "Defendant has in fact registered AWAN with ASCAP according to these PRO's database. Defendant refused to answer any questions related to his income from AWAN during Discovery." [Dkt. 92 at 8] The Opposition continues, "A jury, however, can find that Defendant knowingly facilitates the continual digital audio transmissions of HPW broadly and widely to the public within the statutory period through his use of PRO's; and find the Defendant liable for contributing to those infringement." [Dkt. 92 at 8-9].

First Plaintiff disingenuously interprets the record, as Defendant did respond to the interrogatory and stated that "the total gross income that Responding Party has received from his performances and distributions from AWAN since April 5, 2016 is $0." [Dkt. 92-9, Response to Int. No. 6]. Further, the argument provided by Plaintiff is unsupported by

9

the record. The record does not show that Defendant "broadly and widely" contributorily transmitted the song AWAN via digital audio transmission nor has Plaintiff provided any such evidence. Once again, this argument is baseless and frivolous.

Plaintiff has failed to cite to authority or the record to show that Defendant performances live or otherwise of the song AWAN were done via digital audio transmission.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the Foregoing reasons, Defendant respectfully requests this Court to enter summary judgement in its favor and against Plaintiff on the issues briefed, that Defendant is not liable for copyright infringement of a sound recording and that Defendants live performances of AWAN and the post of AWAN on YouTube do not constitute copyright infringement in a sound recording.

Defendant further requests that the Court find Plaintiff's arguments and contentions to be frivolous.

                                                        By: /s/ Dariush G. Adli
                                                              Dariush G. Adli
                                                              Ani Martirosian
                                                              ADLI LAW GROUP P.C.
                                                              12400 Wilshire Blvd., Suite 1460
                                                              Los Angeles, California 90025
                                                              P: (213) 623-6546
                                                              F: (213) 623-6554
                                                              adli@adlilaw.com
                                                             *Attorneys for Defendant*
                                                             Karim Kharbouch

Michele S. Katz
Advitam IP, LLC
150 S. Wacker Drive
Suite 2400
Chicago, IL 60606
P: (312) 332-7710
F: (312) 332-7701
mkatz@advitamip.com